Jonathan A. Stieglitz, Esq.
(SBN 278028)
**THE LAW OFFICES OF**
**JONATHAN A. STIEGLITZ**
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email: jonathan.a.stieglitz@gmail.com

Eric H. Weitz, Esq.*
Max S. Morgan, Esq.*
The Weitz Firm, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Chris R. Miltenberger* (TX Bar # 14171200)
chris@crmlawpractice.com
**Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
Phone: (817) 416-5060
Fax: (817) 416-5062

***Pro Hac Vice Admission Forthcoming***
***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**CHERYLL CLEWETT**, *on behalf of herself and others similarly situated,*

*Plaintiff,*

v.

**1LIFE HEALTHCARE, INC. d/b/a ONE MEDICAL SENIORS and COVERAGE ONE INSURANCE GROUP, LLC**,

*Defendants*.

Case No.: ___________________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**Nature of this Action**

1. This action arises out of Defendants, 1Life Healthcare, Inc. d/b/a One Medical Seniors ("One Medical") and Coverage One Insurance Group, LLC ("Coverage One") (together, "Defendants") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. Coverage One makes, or has made on its behalf, aggressive unsolicited telemarketing calls soliciting the primary care physician services offered by One Medical.

3. These calls are made to individuals on the National Do-Not-Call Registry.

4. Coverage One uses deceptive practices in making its illegal calls on behalf of One Medical to conceal its illegal acts, including but not limited to falsely identifying itself as "Oak Street Health," a competitor of One Medical, when making its calls.

5. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6. The TCPA also prohibits falsely identifying the entity on whose behalf a telemarketing call is being made.

7. Accordingly, Plaintiff Cheryll Clewett ("Plaintiff" or "Ms. Clewett") brings this action on behalf of herself and classes of similarly situated individuals.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over One Medical because One Medical resides in this District and conducts business transactions in this District.

10. This Court has jurisdiction over Coverage One because Coverage One conducts business transactions in this District, Coverage One contracted with California companies to

telemarket on its behalf, and Coverage One holds a California issued insurance license (i.e., License No. 0K24607).

11. Venue is proper in this District because One Medical is located in this District and because some of the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

**Parties**

12. Plaintiff Cheryll Clewett is a natural person who at all relevant times resided in Hockley, Texas.

13. Ms. Clewett is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

14. One Medical is a corporation organized and existing under the laws of the State of Delaware, with headquarters located at One Embarcadero Center, Floor 19, San Francsico, California 94111.

15. One Medical is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

16. Coverage One is a limited liability company organized and existing under the laws of the State of Florida, with headquarters located at 1451 West Cypress Creed Road, #300, Fort Lauderdale, Florida 33309.

17. Coverage One is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

**TCPA Background**

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because

"telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

20. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

21. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

22. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

23. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26. These regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27. These regulations also require persons or entities making telemarketing calls to accurately provide "the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

28. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

29. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

30. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

31. These requirements are separate but cumulative. In other words, a company must

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

comply with both the 64.1200(d) regulations *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

32. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

33. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

34. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

**Factual Allegations**

35. Ms. Clewett is the sole and customary user of a cellular telephone number (XXX)-XXX-6727.

36. Ms. Clewett's cellular telephone number (XXX)-XXX-6727 is used for residential

purposes and is not associated with a business.

37. Ms. Clewett's cellular telephone number (XXX)-XXX-6727 has been on the National Do-Not-Call Registry since February 2, 2012.

38. Ms. Clewett personally placed her cellular telephone number (XXX)-XXX-6727 on the National Do-Not-Call Registry because she did not want unsolicited telemarketing calls or texts, such as the ones at issue here.

39. On or about July 13, 2023, Ms. Clewett began receiving telephone calls from Defendants. The calls were made by Coverage One.

40. One Medical outsourced the act of executing the unlawful calls to Coverage One.

41. Upon information and belief, One Medical authorized and directed Coverage One to promote One Medical's services in accordance with specifications largely dictated by One Medical.

42. Upon information and belief, One Medical made Coverage One an authorized agent of One Medical – expressly or impliedly – to execute unlawful calls to Ms. Clewett and the class members.

43. One Medical knew that Coverage One was engaged in marketing practices constituting unlawful calls in accordance with their agreement.

44. One Medical accepted, did not object to, and benefitted from Coverage One's violations of the TCPA.

45. One Medical directed and controlled the conduct of Coverage One by, *inter alia*, retaining rights to modify, amend, or withdraw the authority to act on behalf of One Medical in making the unlawful calls, compensating Coverage One for engaging in conduct that violated the TCPA, knowing that Coverage One engaged in conduct that violated the TCPA, consciously disregarding the risk Coverage One was violating the TCPA, and taking steps to avoid such knowledge, instructing Coverage One, impliedly or expressly, not to disclose information that, if

known by One Medical, would establish One Medical's knowledge that Coverage One was engaged in conduct violating the TCPA, and providing feedback to Coverage One.

46. One Medical allowed Coverage One access to One Medical's information and systems when making calls so that transfers would appear seamless between the two parties.

47. The first call Ms. Clewett received occurred on July 13, 2023 and came from (832) 333-1797.

48. During the first call, the telemarketer identified herself as "Phoebe" and stated she was calling from "Oak Street Health."[2]

49. This was false.

50. Phoebe was calling from Coverage One on behalf of One Medical to solicit One Medical's services.

51. Upon information and belief, Defendants use the name "Oak Street Health" to conceal their identity and avoid their illegal activity from being tracked back to Defendants.

52. The telemarketer attempted to solicit Ms. Clewett with physician services.

53. Ms. Clewett asked the telemarketer how the telemarketer obtained her telephone number.

54. The telemarketer stated, "um, actually its' in the autodialer."

55. Ms. Clewett engaged with the telemarketer in an attempt to identify the true identity of the telemarketer.

56. Ms. Clewett asked the telemarketer to identify their company website.

57. The telemarketer refused and told Ms. Clewett to instead search for "Oak Street Health" on the internet.

[2] Oak Street Health is a competitor of One Medical.

58. Ms. Clewett asked the telemarketer for a call back number.

59. The telemarketer refused to provide one and stated she would call Ms. Clewett back at another time.

60. Ms. Clewett then asked what the call was about, and the telemarketer began her pitch regarding an "exclusive opportunity" to experience "top quality healthcare with a focus on value-based care."

61. After asking some questions about Ms. Clewett's medical insurance, the telemarketer abruptly stated that the "offer" she was calling about was not available in Ms. Clewett's zip code.

62. At that point, Ms. Clewett had not provided her zip code to the telemarketer.

63. Ms. Clewett asked the telemarketer how the telemarketer knew what her zip code was.

64. The telemarketer explained that it was in the autodialer.

65. Ms. Clewett asked the telemarketer to identify the zip code in the autodialer.

66. The telemarketer recited in inaccurate zip code.

67. Ms. Clewett informed the telemarketer the zip code was incorrect and provided her correct zip code.

68. After a period of silence, the telemarketer again stated that the "offer" was not available in her zip code.

69. Ms. Clewett then asked the telemarketer why the telemarketer would call her about something that is not even available in her area.

70. The telemarketer responded, "because I can't even control it because its an autodialer, Cheryll."

71. On or about July 18, 2023, Ms. Clewett received another call from Defendants.

72. This call came from (832) 333-1542.

73. The telemarketer identified herself as "Liz" and stated she was calling from "Oak Street Health."

74. The telemarketer began her script, which was nearly identical to the script Phoebe used.

75. Ms. Clewett engaged with the telemarketer in an attempt to identify the true identity of the telemarketer.

76. The telemarketer transferred Ms. Clewett to One Medical.

77. Ms. Clewett spoke with a representative of One Medical.

78. The One Medical representative explained One Medical is a primary care doctor's office for seniors.

79. The One Medical representative explained that their agents refer individuals to them.

80. The One Medical representative asked if Ms. Clewett called "SunFire" or if "SunFire" called her.

81. Ms. Clewett advised that she was called.

82. The One Medical representative apologized and stated that it was supposed to be a warm transfer so they are aware what is "going on."

83. The One Medical representative then began to solicit Ms. Clewett.

84. Ms. Clewett asked how she got transferred to One Medical.

85. The One Medical representative advised that One Medical's internal system showed the call came through "SunFire"[3] from Coverage One.

---

[3] Upon information and belief, Sunfire is a technology platform that provides insurance agents with various Medicare related enrollment tools and information. *See* https://www.sunfireinc.com/what-we-do/ (last accessed August 21, 2023).

86. Ms. Clewett did not provide prior express invitation or permission or consent for these telephone calls.

87. Defendants did not have the required policies or procedures at the time of the calls it made to Ms. Clewett and the classes defined below.

88. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the use of false identification during the telephone calls to Ms. Clewett.

89. Defendants' violations were negligent.

90. Alternatively, Defendants' violations were willful and knowing.

91. Ms. Clewett and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Defendants' telephone calls were annoying and a nuisance, and wasted the time of Ms. Clewett and the class members. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

**DEFENDANTS' LIABILITY**

92. Defendants used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

93. Defendants made two or more telephone solicitations to Ms. Clewett, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

94. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Clewett is entitled to $500

per call through 47 U.S.C. § 227(c).

95. Ms. Clewett is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

96. Defendants placed two or more telemarketing calls to Ms. Clewett, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

97. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Clewett is entitled to $500 per call through 47 U.S.C. § 227(c).

98. Ms. Clewett is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

99. Ms. Clewett brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE TCPA CLASSES

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

> Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period from four (4) years prior to the filing of the Complaint.

("Policy Class").

(The Registry Class and the Policy Class are collectively referred to herein as the "Classes.")

100. Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

101. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

102. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendants or its agent made the telephone calls;
- The telephone numbers to which Defendants or its agent made telephone calls;
- The telephone numbers for which Defendants had prior express written consent;
- The purposes of such telephone calls; and
- The names and addresses of Class members.

103. The Classes are comprised of hundreds, if not thousands, of individuals.

104. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendants (or someone acting on their behalf) make telemarketing calls;
- Whether Defendants (or someone acting on their behalf) obtain prior express written consent;
- Whether Defendants or the entities with which they contract make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendants had the required policies and procedures prior to making telemarketing calls;
- Whether Defendants' statutory violations were willful and knowing; and
- Whether Defendants should be enjoined from engaging in such conduct in the future.

105. Plaintiff is a member of the Classes in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, and while her telephone number was on the National Do-Not-Call Registry.

106. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

107. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

108. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

109. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

110. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

111. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

112. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

113. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

114. Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-113 as if fully set forth herein.

115. Defendants made, or had made on their behalf, telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

116. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

117. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

118. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

119. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

120. Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-113 as if fully set forth herein.

121. Defendants made numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

122. Defendants did so despite not having a written policy as required by the TCPA.

123. Defendants did so and misrepresented their identity to conceal their illegal conduct.

124. Defendant did so despite not training its personnel on the TCPA's identification requirements.

125. Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

126. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

127. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: August __, 2023

*s/ Jonathan A. Stieglitz*______

Jonathan A. Stieglitz, Esq.
(SBN 278028)
**THE LAW OFFICES OF**
**JONATHAN A. STIEGLITZ**
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email: jonathan.a.stieglitz@gmail.com

Eric H. Weitz, Esquire*
Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

Chris Miltenberger, Esq.*
Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel Blvd., Suite 200
Southlake, Texas 76092
Tel: (817) 416-5060
Fax: (817) 416-5062
chris@crmlawpractice.com

*Counsel for Plaintiff and the proposed classes*

(*to seek admission *pro hac vice*)